Good morning, Your Honors. My name is Lloyd Bell. I'm here for the plaintiff, Ms. Hanna Mercer. The issue in this case is straightforward. It's whether the GEICO umbrella policy that was issued to the insured, Robert Miles, applies to the underlying loss in this case, which was a car wreck in Costa Rica. The essential facts aren't in dispute at all as to what happened. Robert Miles was in Costa Rica. He went to a local Alamo franchise and rented a car, a Suzuki. He opted to purchase the optional insurance coverage through a company called Qualitas. Qualitas provides personal injury coverage for third parties injured in the course and operation of the vehicle. Mr. Miles was driving the vehicle with his backseat. He left his lane of travel and went in front of a bus. There was a catastrophic collision that cost Mr. Miles his life. Hanna Mercer was catastrophically injured in the wreck. She made a claim for under the policy, under the umbrella policy, and GEICO has filed a declaratory judgment action saying the policy does not apply. We're here because the District Court misread and misapplied the policy language and concluded that exclusions within the Qualitas policy applied and provided and took away coverage for the GEICO umbrella policy. Now, nobody asked the District Court to apply Costa Rican law to the interpretation of the Qualitas policy, right? Everybody was following Georgia law. Yes, sir. There's agreement that Georgia law applies. And under Georgia law, Allstate v. Graves case, excuse me, the Lee v. Universal Underwriters 2016 case. I assume that you urge for the best law you can find to apply. Well, the law on the interpretation of insurance contracts is pretty clear. And you start with the contract and you start by looking at the umbrella policy and you look and find out what it says about who an insured is. And it says insured means you, the named insured under the policy. And it says with respect to a motor vehicle, such person isn't insured only if the motor vehicle meets the definition of auto in this policy. Nobody's arguing that. It does. And is insured by a primary auto policy, a primary auto policy. Mr. Miles had a GEICO primary auto policy, which does not apply because it's got a territorial exclusion. So it does not apply. The Qualitas policy that he purchased is a primary auto policy. It states what the coverages are. It says, this is 2.3 of the policy on page 12. This coverage covers, as a result of a traffic accident, the extra contractual civil liability incurred by the policyholder or driver that uses the vehicle. And that as a consequence of that use causes injury and or death to persons. No question, there's an auto policy. The declaration sheet identifies the Suzuki vehicle as the named vehicle. There's a specified amount of coverage on the declarations page. And the policy applies. Now the reason the district court respectfully misconstrued this policy is because they looked at an exclusion. They picked it up out of GEICO's briefing, complete with ellipsis. And they said this does apply. The exclusion does apply. I misspoke. Yes, Your Honor. The exclusion does apply. But the actual exclusion states that injuries and or deaths of persons that the insured vehicle causes to third parties when they depend economically from the policyholder because they are relatives of the policyholder in any degree or type of relationship or because they are at his service upon occurrence of the sinister or else when they are occupants of the vehicle. Well, the district court and GEICO just ellipsed, a total ellipse. It was a totality of this exclusion. And they didn't mention the financial, the economic dependence portion of the exclusion. Your argument is that the clause when they are occupants of the vehicle is a modifier of the initial clause that says when they depend economically from the policyholder. Absolutely, Your Honor. Otherwise, the economic dependence language makes no sense. And if you read it, it's a it relates back to this language because it says third parties. That's the broad one. And then it's there's a qualifying language. Third parties when they, the third parties, depend economically on the policyholder because they, the third parties, are relatives of the policyholder or because they, the third parties, are at the service upon occurrence of the sinister or because or else when they, the third parties who are financially dependents, are occupants of the vehicle. Otherwise, that. But why does occupancy of the vehicle have any relationship to economic dependency? Well, there's a class of people that may not fit into these other categories that might be economically dependent. You can have a person, an economic dependent person is defined in the policy more broadly. It's any person who is dependent upon the salary of another. This is more limited and there's a class of people that this would fall, that this would apply to. You can have an occupant of the vehicle that's economically dependent who's not a relative or who at the time is not in the occurrence of the sinister which is also defined in the policy. You could be, you could have a ward. You could have a migrant worker or an employee at a factory or somebody that is economically dependent on you that's not a relative and at the time of the collision is not included in the occurrence of the sinister. Alternatively, Your Honor, this is, the fact we're talking about it suggests that it's somewhat vague on this point and Georgia law is very clear that if there are any ambiguities in exclusions or, excuse me, in a policy is to be construed in favor of coverage and against the person or the entity that drafted the policy which in this case was GEICO. Exclusions are strictly construed against the contract, against the entity that prepares the contract, in this case GEICO. So if there is any ambiguity on this or else language, then it must be construed against GEICO. The other point that the district court relied upon in finding that there was no coverage is they imposed an additional burden on the appellant or on Ms. Mercer and said that appellant has not shown that Qualitas has been forced to either pay or state a position as to coverage. We have been dealing with Qualitas in Costa Rica and it's presented challenges of course but this additional burden that the district court places on us is nowhere found in Georgia law. In Georgia, under the Graves case to establish a prima facie case on a claim under a policy of insurance, the insured must show that the occurrence was in the risk of the, the risk insured against. So in this case, Mr. Miles very fortunately purchased optional auto coverage to insuring against and the thing that ultimately happened that cost him his life and severely injured Ms. Mercer. The appellant court says though we have this duty that we haven't shown they've been forced to pay and they cite to this language in the umbrella policy under liability and it says that primary insurance which is what we're arguing this Qualitas policy is means insurance for which a minimum required liability limit is shown on the declarations which it is and which is payable on behalf of an insured for liability for personal injury or property damage. So payable, the court interpreted that to mean that we must show that it has been paid or they have to state a position as to coverage but words are given their ordinary meaning in interpreting these contracts and if you look up payable in Black's dictionary and of course we cite this in our brief, payable means may be payable without being due. So does not mean it has to be due or we have to show they've taken a position on coverage. So the district court misapplied the exclusion. They placed a burden which doesn't exist in Georgia law and the final exclusion that Geico is trying to avail themselves under the Qualitas policy also is a misreading of the exclusion and does not identify the pertinent language. Specifically Qualitas points to an exclusion which they say applies to all occupants. This is on page 38 of the policy and under this exclusion it says in no event under the terms and conditions hereof shall the company Qualitas cover the expenses in which the policyholder incurs for material damages suffered by the insured vehicle and the injuries or death of the driver and or the occupants of the insured vehicle unless occupants civil liability coverage has been contracted. We go to occupants civil liability coverage which Geico did not do and did not mention in their briefing and it's on paragraph 233 civil liability for the civil liability which the policyholder incurs and as consequence of such use there is fault negligence causes injury and or death to relatives inside the compartment stall or cabin of the insured vehicle. Bill you want to reserve some. I do your honor. I get carried away. Thank you very much. Miss Katz. Thank you. I think Costa Rican law does apply to that Qualitas policy. It was a policy. Will you pull the mic a little closer. It's a policy that was made in Costa Rica for operation of a vehicle in Costa Rica. Did you assert Costa Rican law? We did not. Under 44-1? We did not. The burden of proof, we did not. The burden of proof is on the party asserting coverage under the Geico policy if they want to proffer the Qualitas policy and saying that it's payable as a primary policy and the burden is on them to show Costa Rican law would. I don't disagree with you on that but did you ever tell the district court that they had met their, they had failed to meet their burden because Costa Rican law was not provided? We did not. Then how have you not waived that issue? Well, I mentioned that only because I don't want to leave the court with the impression that we believe that Georgia law applies to a Costa Rican policy. That's all everybody argued to the district court. And I'm perfectly willing to argue it today. There's nothing else to argue. Under Georgia law, clearly. Right. That is correct. There's no Costa Rican law that has been noticed to the court. And none that you're going to provide. That is correct. So. But I can point to the terms of the Qualitas policy and apply Georgia law to show that Ms. Mercer has not met her burden of proof of showing that there is coverage under that policy that would permit it to be called a primary policy. Was there ever demand, I know it's part of the record, demand for payment under the other policy? Under the Qualitas policy? Yeah, under the. That there is, was an affidavit submitted by counsel for Ms. Mercer, who is not here today, saying that he is negotiating with Qualitas. That's all we know. That we objected to that affidavit. The court said for a number of reasons, it probably should not be admissible, even in summary judgment stage. But that even considering that affidavit, the burden of proof had not been met. There is, there apparently is some negotiating that did go on. I know that there was a demand made on Qualitas as early as August of 2014 for payment. As far as we know, Qualitas has never acknowledged any coverage under that policy. Well, let's talk a little bit about the GEICO umbrella policy first. All right. Before we get to the embedded Qualitas policy, assuming that it's a primary policy, okay? The exclusion says, in part, not the exclusion, I'm sorry. The umbrella policy says, in part, with respect to a motor vehicle, such person is an insured only if the motor vehicle meets the definition of auto in this policy and is insured by a primary auto policy, right? That is correct. That's the relevant language of that portion of the umbrella. That is correct. Okay. It doesn't say and is covered by a primary auto policy. It says is insured by, and it seems to me that there's no dispute that the Suzuki was insured by the Qualitas policy. But if you go further, there's a definition in the GEICO policy that defines primary policy. And there it states that that is insurance that is payable. So it can't just be in existence. It has to be payable. But payable doesn't mean paid. Is it even payable? Have they met their burden of showing that there is any money payable under the Costa Rican policy? Nothing. Well, they certainly, if that affidavit wasn't excluded, they haven't shown that Qualitas has denied the claim. But they have a burden of showing that it is in existence. We don't have to prove a negative. They have to show affirmatively that there is a payable policy that can qualify. They have not done that. There is no acknowledgement by Qualitas in the record that this is a payable policy. The only thing they have is an affidavit from the rental car agency saying that it is potentially payable. Here we are three and a half years later and there's been nothing beyond that. But how do you transform insured into covered? Saying that an auto is insured under a policy doesn't mean that an auto provides coverage under the policy because there may be exclusions for a given event. Clearly. The auto is covered but there is no payable insurance that could meet the claim here. And that is, it's amply demonstrated by an absolute absence of any proof on behalf of the party that has the burden of proof that there is any money payable for this claim. If you look at the definition of primary policy. But I'm not even getting to primary auto policy. I want to know what you mean by, what the GEICO policy means through the words insured by. They're not the same words as paid by or providing coverage under. It says insured by and that vehicle is certainly insured by the Qualitas policy, is it not? It is but you've got to drill deeper and say what is a primary policy? And that is defined in the contract. What's the definition that it makes a benefit payable? Primary insurance and this is on page 28 of the record. Primary insurance means insurance for which a minimum required liability limit is shown on the declarations that is in existence here. However, B, which is payable on behalf of an insured for liability for personal injury or property damage. What does payable mean? Payable means there is coverage. The amount may be at issue. But it is not payable. Where do you get that definition from? Payable is not defined in the policy. But you look at the common and ordinary meaning. So I'm asking you where you get it from. Is it payable if there's no coverage under the policy? No. Well, it could mean potentially payable. You're saying it means definitely payable. I'm not even, I'm saying there's no evidence. It's even potentially payable when you look at the policy itself. Well, I want to know where you get the definition since it's not a defined term in the policy. Where do you get the definition of payable from and where do you suggest we go get it from? Potentially or payable means if there is coverage under the policy, then the money, then the benefits are payable. I understand that's your argument. I want to know how you get there and where you want us to look to see what it means under Georgia law. Well, I think under Georgia law, when you look at contracts, you can look at the common and ordinary meaning of terms where there is no definition provided to you. And the natural obvious meaning is to be preferred over any curious hidden meaning. And that's under Georgia law, Payne v. Middlesex Insurance Company. You just look at... You think Georgia law payable means that there is definitely coverage, although there might be some dispute as to the extent of damages? Yes, that was what I would say. It's not payable otherwise. If there's coverage, it's payable. If there's not coverage, it's not payable. And now three and a half years later, there does not appear to be coverage. Nothing has been paid. There's no evidence in the record that coverage has been accepted and therefore it's payable in an amount to be determined. We could live with that, but we haven't even gotten to that point. So is this really a rightness issue you're arguing? It could potentially be a rightness issue. So your suit was filed prematurely? I believe so. If this court affirms the judgment of the district court, I don't think there's anything that would preclude Ms. Mercer from eventually being able to show that there is coverage payable under that COLETAS policy and that it does qualify as a primary policy. GEICO would look at it. So if tomorrow the primary carrier wrote a letter saying, you're right, we're going to pay you, we'll figure out the amount later on, you would consider that to satisfy your GEICO policy? I can say would look at it afresh at that point. But you've got, to go back to Judge Steele's question, you've got res judicata staring them in the face because they've lost on the other exclusion. That is a matter of interpretation for this COLETAS policy. It doesn't matter. The other exclusion doesn't depend on whether or not you've been paid or not paid. We're relying on the payable primary policy definition. That is what we're relying on. You're not relying on the exclusion, one of the exclusions that district court used, and that is the exclusion for when third parties are occupants of the vehicle? You're not relying on that? You're giving that up? That's under the COLETAS policy. I'm saying there are no exclusions under the GEICO policy. Under the COLETAS policy. But that's the reason why you're saying it's not payable. That is correct. In fact, we're wrong in our interpretation of that policy. If in fact COLETAS says, oh no, we don't construe our policies here that way and are able to show that to the satisfaction of GEICO and perhaps ultimately to a court if it's contested, then that would suffice. But we're saying they haven't met their burden of proving that there is payable coverage under this policy at this point. We could be wrong about the exclusion. It doesn't appear that we are. What would the district court do about its interpretation of the exclusion? Grant a Rule 60 motion to set aside the judgment? No, I think it would be talking about an entirely new case. Yes. And you would give up any claim of bar or res judicata or collateral estoppel? I don't think there would be res judicata applied at that point. No, I'm not asking you. This court is actually required to construe the COLETAS policy. Sure we are. The district court gave that as one of the bases for ruling in your favor. One of them, although it might be an independent basis, was that the exclusion in the policy barred Ms. Mercer from receiving coverage under that policy, right? It cited, correct. It cited that as saying it does not appear to be coverage under the COLETAS policy and therefore Ms. Mercer has not met her burden of proof that there is coverage payable under a primary policy. That's a ruling in a case that serves as a bar going down the road. If she comes up with additional new evidence at some point in the future that has not been looked at by the courts in this case, then I submit that could be considered at that point. But there is no evidence at this point, perhaps it's a rightness issue, that there is any primary coverage payable. So then this is worthless to you. This lawsuit win is worthless to you until that policy issue is determined by COLETAS. We don't think COLETAS will ever accept coverage under this policy. That's not my question to you. My question to you is this piece of paper, this judgment is worthless to you it doesn't prevent you from being sued again until COLETAS makes a decision that's definitive one way or another in Costa Rica. I think it prevents us from being sued now and for Ms. Mercer to say we're liable for bad faith for not paying their Holt demand. She's not a first party beneficiary of the contract.  We're saying there is no coverage for Mr. Miles' estate for any claim presented by her. At this point, GEICO has acted, if we have the district court affirmed, GEICO has acted properly in saying there's been insufficient evidence showing that there's any coverage under the policy. We're not acting in bad faith. That's why we filed a declaratory judgment under Georgia law because it was a demand that GEICO cover the claims against Mr. Miles. Excuse me. Are there any time limits set forth in the GEICO policy that would be arguably raised by GEICO if the underlying policy does indeed someday pay? I'll look for that. I don't see any limitations like that. I don't want to bind GEICO to that, but my reading of the policy does not disclose any limitations, issues in that regard. And this is a declaratory judgment. GEICO is, in essence, really a neutral party. If there's coverage, there's coverage. If there's not, there's not. So, you know, we don't really have a strong interest one way or the other. We just want to know to tell us which way we should go on this. You're not really a neutral party. Well, technically, we're a neutral party. Well, technically, you have to pay a lot of money if you lose. That is potentially correct. The GEICO policy, I don't want to lose sight of this, states in the GEICO policy, the one that Mr. Miles had, if you travel outside the United States, you must obtain the equivalent of your primary insurance. So, I mean, this was not something that should have been a surprise to anyone. And when he got the primary insurance, he had a selection of packages. This is clear in the COLETAS policy and in the LMO affidavit. Packages from basic to premium. He selected the basic. The premium coverage would have covered claims of occupants of the vehicle. He did not select that coverage. So, he did not select coverage that was the equivalent of his primary policy, even though, arguably, he should have inquired further. And where that is found in the COLETAS policy, if you look at the optional coverage is referred to in tables at pages 190, the record 197, and the record at 213. Six different packages are offered and described in the record at page 196. Only the premium packages offer coverage for liability against occupants. And if you look at page 162 of the record, this policy is a basic policy. He selected a basic policy. It did not provide coverage for claims of occupants. That is why, to this date, COLETAS has not paid or indicated that this coverage is payable and, therefore, does not qualify. Thank you. I mean, Geico stands up here and says they're not acting in bad faith, and yet they, for the first time in this years of litigation, they suggest to the court that Costa Rican law applies when they've never raised that issue or argued that issue in any way or form. I would suggest that is bad faith. Geico also does not mention. Well, it's just as obvious, it's plainly obvious that Costa Rican law applies. It would determine whether or not that primary coverage provided insurance in this situation. Well, the issues before this court, though, Your Honor, we've all conceded are governed by Georgia law in interpreting this Geico umbrella policy. Geico doesn't mention. Of course, the lawsuit is on a Geico policy. That's why Georgia law applies. Well, the lawsuit's actually been, we have a tolling agreement in place. The question is, are you contending that Geico has the burden of proof of a negative? We have the burden of proof of establishing coverage, which we have done. You had the burden of proof of showing primary coverage. Which we've done, Your Honor. And I would point out, this is the Geico umbrella policy under the limits of liability. It says, if an occurrence results in personal injury or property damage and is not covered under the terms and conditions of your primary. We understand you're arguing about the policy, Geico's policy language. Well, this is a different provision that hasn't been addressed, Your Honor. I'd like to, if I may. Their point seems to be, well, it has to be payable, which means it has to be paid. The policy, the underlying policy has to pay before the umbrella becomes in effect. That's not true under the policy. This other provision on page 4, the limits of liability, says, if an occurrence results in personal injury and is not covered under the terms and conditions. Well, normally, excess coverage of the umbrella policy triggers in after the first one has been paid. I mean, that's the normal insurance policy practice. The way they've chosen to draft their policy is different. Their policy says, if the occurrence results in personal injury and is not covered under the terms and conditions of your primary policy, but is covered by this policy, the umbrella, it says, we only pay those damages which exceed your retained limit, which is $500. So they do have a provision that they provide where you get your primary policy, which is a qualitas policy, and for whatever reason, it doesn't pay out. They still provide coverage under the plain language of their policy. The other point I would make, Your Honor, in response to opposing counsel, is there is a territorial limit. Mr. Miles had insurance from GEICO for the umbrella as well as a GEICO auto policy. There's a territorial limit that just says the policy applies only to accidents in the United States. It does not say you have to then go and get an equivalent of insurance coverage policy with all the terms and conditions if you leave the United States and purchase the optional coverage. Mr. Miles purchased the optional coverage. I think it was $120 million cologne, which is about $260,000 U.S. dollars in coverage at the time. His coverage in the U.S. was $300,000, so roughly in the same ballpark of coverage. And Georgia law provides that one of the things the court should look to in interpreting these contracts is the, does the insurance contract read in accord with the reasonable expectations of the insurer? Well, Mr. Miles is buying auto coverage. There's no exclusion in there for passengers or occupants unless they're relatives. We talked about that. And his reasonable expectation is that the insurance he's bought will suffice while he's overseas and that the umbrella that he has bought and paid for will also pay the coverage that it's promised to pay. Last point I'd like to make in the last few moments, the court does not have to rely on qualitas stating or affirming their position on what the contract says. The interpretation of a contract is a matter of law for the courts to decide if there's a dispute. And in this case, it's almost as if we need to wait for some magical words from qualitas to say, yes, we accept it, no, we don't. Truth is, they've made offers and we've been negotiating with them. Costa Rica is a different animal, their civil justice system. But that's regardless. The court can look at the policies applying Georgia law, which we've all agreed apply, and the court can determine if there's coverage or not. You don't need a qualitas insurance adjuster to tell you that. And there is. There's a primary policy that satisfies the requirements of the umbrella policy. And if the primary policy doesn't apply, primary insurance, then they pay up to their limits, less the retained limit of $500. So, Your Honor, we would ask that you hold GEICO to their promises that they put in writing and that you find that there is coverage under the umbrella policy. Thank you. Thank you. Court will be in recess until nine in the morning. All rise.